IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 5:10-CV-00075-RLV-DCK

| | |
|---|---|
| TAMMY L. PARSONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 11) and "Defendant's Motion For Judgment on the Pleadings" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Judgment on the Pleadings" be granted; and that the Commissioner's decision be affirmed.

### I. BACKGROUND

Plaintiff Tammy L. Parsons ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On January 17, 2007, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.* and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning January 7, 2006. (Transcript of the Record of Proceedings ("Tr.") 9). The Commissioner of Social Security (the "Commissioner"

or "Defendant") denied Plaintiff's application initially on August 1, 2007, and again after reconsideration on January 4, 2008. (Tr. 9). Plaintiff filed a timely written request for a hearing on March 7, 2008. (Tr. 9).

On June 25, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Emanuel C. Edwards ("ALJ"). (Tr. 9, 19-42). On September 10, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 6-18). Plaintiff filed a request for review of the ALJ's decision on November 10, 2009, which was denied by the Appeals Council on April 20, 2010. (Tr. 1-4). The September 10, 2009 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 18, 2010. (Document No. 1). Plaintiff's "Motion For Summary Judgment" (Document No. 11) and "Brief In Support Of Motion For Summary Judgment" (Document No. 11), were filed November 12, 2010; and "Defendant's Motion For Judgment on the Pleadings" (Document No. 12) and "Defendant's Memorandum In Support Of His Motion for Judgment on the Pleadings" (Document No. 12-1), were filed January 10, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard Voorhees is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 7, 2006, and the date of his

decision.[1] (Tr. 9). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from January 7, 2006, through the date of his decision, September 10, 2009. (Tr. 9).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was <u>not</u> disabled. (Tr. 17).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since January 7, 2006, her alleged disability onset date. (Tr. 11). At the second step, the ALJ found that Plaintiff's chronic obstructive pulmonary disease, fibromyalgia, probable opioid dependence/drug seeking behavior, and bilateral symmetrical sensorineural hearing loss were severe impairments. (Tr. 11).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 11-12).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work activity, with the following limitations:

> stand/walk 6 hours of an 8-hour workday and sit 6 hours of an 8-hour workday; lift/carry 50 pounds occasionally and 25 pounds frequently; push/pull 50 pounds occasionally and 25 pounds frequently; with no exposure to excessive levels of dust/gas/fumes/smoke/etc.; the claimant has a hearing loss, but is able to hear and understand normal conversation, to a large degree unaided.

(Tr. 12). In making his finding, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§404.1527 and 416.929 and SSRs 96-4p and 96-7p. (Tr. 12).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987).

At the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a cashier or stocker. (Tr. 17). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between January 7, 2006, and the date of his decision, September 10, 2010. (Tr. 17).

Plaintiff on appeal to this Court makes the following assignments of error: (1) failure to afford proper weight to the opinions of both treating and non-treating physicians and to explain why he did not give weight to those opinions; and (2) failure to consider all the evidence that supported Plaintiff's claim for disability. (Document No. 11). The undersigned will discuss each of these contentions in turn.

**A. Weight Given To The Opinions of Both Treating and Non-treating Physicians**

In her first assignment of error, Plaintiff argues that the ALJ failed to "afford proper weight to the opinions of both treating and non-treating physicians, nor did he offer any explanation as to why he failed to give weight to those opinions." (Document No. 11, p.4). In particular, Plaintiff alleges that the ALJ failed to give weight to certain statements made by Dr. Winfield, Dr. Hart, and the non-examining physicians who reviewed the record. (Document No. 11, pp.4-6). Defendant concludes that the ALJ properly weighed the opinions of each physician and also provided an adequate explanation for the weight he assigned to them. The undersigned will briefly address the parties' arguments.

**1. Dr. Winfield**

First, Plaintiff argues that the ALJ failed to weigh and explain the weight given to Dr. Winfield's statement that, "Plaintiff was permanently disabled for any type of employment." (Document No. 11, p.5) (citing Tr. 16). Plaintiff contends that "due to the period of treatment, the

physician's specialty, and his examinations and tests, the physician's opinion on disability should have been afforded significant weight." (Document No. 11, p.5).

Defendant argues that the ALJ did in fact afford great weight to the medical opinion of Dr. Winfield, but notes that the statement contested here is not an actual medical opinion. (Document 12-1, p.4). Defendant cites to 20 C.F.R. §404.1527(e), which provides in pertinent part: "Opinions on some issues, such as the examples that follow, are not medical opinions...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §404.1527(e) (2010). Among the "issues" in the regulation reserved to the ALJ for decision-making are the following:

> Opinions that you are disabled. We [the Social Security Administration] are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. §404.1527(e) (2010); See also, (Tr. 16). Defendant further argues that the ALJ based his decision that Plaintiff was not disabled on substantial evidence within the record, including: Dr. Winfield's own notes regarding patient treatment, the opinions of several other treating physicians, and Plaintiff's refusal to participate in rehabilitative therapy. (Document 12-1, p.6).

The undersigned finds Defendant's argument on the issue of Dr. Winfield's opinion to be persuasive. The ALJ devoted an entire paragraph of his opinion to explaining why he did not heavily weigh Dr. Winfield's statement that Plaintiff was "permanently disabled for any type of employment." (Tr. 16). The ALJ notes in his opinion that Dr. Winfield's decision about Plaintiff's

7

disability status is "entitled to little or no weight, since [it] offer[s] conclusory statements on issues reserved to the Commissioner of the Social Security Administration." (Tr. 16).

Furthermore, the undersigned also finds that the ALJ relied upon substantial evidence to support a contrary finding to Dr. Winfield's conclusory statement. For example, the ALJ observed that Dr. Winfield himself on several occasions noted that Plaintiff's symptoms were not entirely disabling. (Tr. 15) ("Dr. Winfield noted the claimant complained of pain, but she was in no acute distress and she was described as 'cheerful'. . . At the claimant's most recent visit with Dr. Winfield, the claimant was observed to be in no acute distress."). In addition, the ALJ also relied upon the opinions of several other doctors who all concurred with Dr. Winfield's medical findings. For example, Dr. Guerra noted, "she appears well and was not in any acute distress." (Tr. 15). Dr. Wolfe observed, "her COPD (chronic obstructive pulmonary disease) was clinically improved." (Tr. 15).

The undersigned finds that the ALJ appropriately afforded little weight to the conclusory statement of Dr. Winfield regarding Plaintiff's disabled status because it touched on a decision specifically reserved to the Commissioner, and the ALJ took care to explain his decision based upon substantial evidence within the record.

### 2. Dr. Hart

Next, Plaintiff asserts that the ALJ failed to properly weigh and give an explanation for why he "assigned little or no weight to the opinion of a consultative examiner [Dr. Hart] hired by the Commissioner to evaluate Plaintiff's hearing loss." (Document No. 11, p.5). In pertinent part, Dr. Hart found that "with the degree of hearing loss, she [Plaintiff] would not be able to understand normal conversation and communicate in the workplace and understand instructions from

supervisors with the use of hearing aids since they do not bring her hearing to a normal level." (Document No. 11, pp. 5-6). Plaintiff notes that the ALJ accepted the diagnosis of hearing loss, but "reject[ed] the limitations that naturally flow from this very debilitating impairment." (Document No. 11, p.6).

Defendant argues that the ALJ was justified in affording limited weight to the opinion of Dr. Hart in this instance because his opinion was contradicted by the opinions of other physicians and also by the ALJ's own recorded observations during the hearing. (Document 12-1, p.9). In particular, the ALJ relied upon the opinion of Dr. Stitt, who examined Plaintiff for hearing loss and found that "[Plaintiff's] conversation was at normal tone, normal speed, and there appeared to be good comprehension," even though she did not use her hearing aids. (Document No. 12-1, p.8). Dr. Stitt ultimately concluded that "the hearing loss appears to be frequency dependent[,] as long as she speaks in a normal tone and a normal rate she seems to understand quite well." (Document No. 12-1, p.8). Finally, Defendant also notes that the ALJ relied upon his own observations of Plaintiff at the hearing, quoting the ALJ as noting: "Plaintiff did not wear her hearing aids, and...she did not have trouble understanding and responding to questions." (Document No. 12-1, p.7) (citing Tr. 12). Defendant notes that it is acceptable for an ALJ to "consider his or her own recorded observation of the individual as part of the overall evaluation of the credibility of the individual's statements." (Document 12-1, pp.7-8) (citing SSR 96-7p, "Assessing the Credibility of an Individual's Statements," 1996 WL 374186 at *5 (July 2, 1996)). Thus, the Defendant argues that the ALJ properly afforded little weight to the opinion of Dr. Hart.

The undersigned finds the Defendant's position on this issue to be persuasive. The opinion of Dr. Hart was not that of a treating physician, as explained in 20 C.F.R. §404.1502:

9

> Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source.

20 C.F.R. §404.1502 (2006). As Plaintiff herself admits, Dr. Hart was a "consultative examiner hired by the Commissioner to evaluate Plaintiff's hearing loss." (Document 11, p.5). Thus, Dr. Hart's opinion is not entitled to controlling weight as explained in SSR 96-2p. (SSR 96-2p, "Giving Controlling Weight to Treating Source Medical Opinion," 1996 WL 374188 at *2 (July 2, 1996) ("Although opinions from other acceptable medical sources may be entitled to great weight...opinions from sources other than treating sources can never be entitled to 'controlling weight.'"). Since Dr. Hart's opinion is not that of a treating physician, the standard set forth in 20 C.F.R. §404.15127 applies, which provides that "if any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have." 20 C.F.R. §404.1527(c)(2) (2010).

The undersigned finds that the ALJ relied upon substantial evidence within the record when deciding to afford little weight to Dr. Hart's opinion. For instance, the medical findings of Dr. Stitt that "[t]he hearing loss appears to be frequency dependent[,] as long as she speak[s] in a normal tone and a normal rate she seems to understand quite well" were not consistent with the conclusion of Dr. Hart. (Document 12-1, p.8). In addition, the ALJ noted in his opinion that an "audiological examination dated December 6, 2007, shows that when she [Plaintiff] wears her hearing aids in both ears, she is able to communicate with an 88% discrimination score." (Tr. 15). Finally, the ALJ also observed, "the claimant can hear normal conversation, to a large degree, without hearing aids, which

is supported by the fact that she was not wearing hearing aids at the hearing." (Tr. 15). Therefore, it appears that the ALJ relied upon substantial evidence within the record when he determined not to afford significant weight to the opinion of Dr Hart, a consultative examiner, based upon inconsistencies of Dr. Hart's opinion with those of the medical opinion of Dr. Stitt, the auditory evaluation findings of Plaintiff's hearing capacity with hearing aids, and the ALJ's own recorded observations of Plaintiff during the hearing.

### 3. Non-treating Physicians

Finally, Plaintiff argues that the ALJ failed to assign the proper weight to the "opinions of the non-examining physicians who simply reviewed the medical records of the Plaintiff." (Document No. 11, p.6). Plaintiff notes that non-examining physicians at "both the initial and reconsideration phases of Plaintiff's applications" found that she could not return to her prior relevant work. (Document No. 11, p.6). Plaintiff contends that the ALJ erred by failing to state how he arrived at the decision that "Plaintiff could return to her prior relevant work, in spite of the findings by the Social Security Administration's own physicians." (Document No. 11, p.6).

Defendant argues that the decision relating to whether or not Plaintiff could perform her past relevant work is reserved to the ALJ, as stipulated in 20 C.F.R. §404.1527(e)(1):

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. §404.1527(e)(1) (2010). Defendant argues that the decision about "Plaintiff's ability to perform her past work" falls within this section of the regulation, and the ALJ is thus "under no

11

obligation to accord any weight" to the opinions of non-examining doctors on this issue. (Document 12-1, p.10). In addition, Defendant also argues that the actual opinions of the non-examining physicians who examined Plaintiff's record "do not contain opinions regarding Plaintiff's inability to perform her past work as a cashier/stocker." (Document No. 12-1, p. 9).

The undersigned finds the Defendant's points persuasive on this issue. The ALJ notes that "State Agency consultants, who previously examined the record and reported their findings, concluded that the claimant was capable of performing work at the medium exertional level." (Tr. 16). In particular, the "opinions" referred to by Plaintiff are those of Andrea Davis and Debra Hope, who are state agency disability examiners, and their findings were based on the opinions of Drs. Dascal and Horne. (Tr. 46-48). Dr. Dascal concludes in his actual opinion that Plaintiff should be "limited to Medium exertion for c/o pain due to fibromyalgia." (Tr. 325). In addition, Dr. Horne's opinion concludes that Plaintiff should be limited to "medium RFC with communication and environmental limitations." (Tr. 405). Plaintiff incorrectly alleges that the non-examining physicians who reviewed her record determined that Plaintiff could not return to her past prior relevant work. The record shows that the doctors both recommended medium level work activity. (Tr. 325, 405).

The actual statement referred to by Plaintiff in her argument is found in the letters sent to her by the Social Security Administration denying her claim for disability upon reconsideration. (Tr. 50, 70). The statement Plaintiff contends should be taken as medical evidence states: "We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work." (Tr. 50, 70). This is a general statement contained within a pre-formatted letter and was not made by a nonexamining physician who had actually examined Plaintiff's record. Thus, the ALJ was not required to afford it the consideration that is normally due to a medical

12

opinion. Indeed, the ALJ recognized the opinions of the nonexamining physicians and agreed with their conclusions that Plaintiff should be limited to "work at the medium exertional level." (Tr. 16). The ALJ concluded, "the undersigned finds that the requirements of the claimant's past job [cashier/stocker] do not exceed her residual functional capacity for the wide range of medium work activity. Accordingly, the undersigned finds that [t]he claimant can return to the work she did in the past." (Tr. 17). Plaintiff's contention of error is not supported by the medical evidence within the record.

### B. Consideration of The Evidence Supporting Plaintiff's Claim for Disability

Finally, Plaintiff argues that the ALJ erred by "not considering all the evidence that supported the claim for disability." (Document No. 11, pp.4-5). In particular, Plaintiff points to a favorable Medicaid decision made by the North Carolina Department of Health and Human Services ("HHS") "that established that as of January, 2008, the Plaintiff was found disabled." (Document No. 11, p.7); see also, (Tr. 131). In support of her argument, Plaintiff relies on SSR 06-03p, which reads:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-03p, "Considering Opinions and Other Evidence from Sources," 2006 WL 2329939 at *7 (August 9, 2006). Plaintiff argues both that the ALJ failed to consider the evidence from HHS, and

13

that the ALJ failed to explain the consideration given to the HHS decision within his opinion. (Document 11, pp.7-8).

Defendant argues that the ALJ stated that he "considered all the evidence" when making his decision. (Document No. 12-1, p.12) (citing Tr. 9). Defendant also argues that the ALJ's failure to discuss the weight given to the government agency decision is harmless because "it is exceedingly improbable that the ALJ's failure to discuss the HHS decision could have influenced the outcome." (Document 12-1, p.13). Defendant points to both the vague reference to "additional medical evidence" contained with the HHS decision, coupled with the "significant amount of evidence postdating the HHS decision" that the ALJ had at his disposal, in support of the argument that the ALJ's failure to explain the weight given to the HHS was harmless. (Document No. 12-1, p.14).

This is admittedly a close question. However, even assuming *arguendo* that the ALJ erred by failing to discuss the HHS notice in his decision, the undersigned finds that such error to be harmless in light of the substantial evidence within the record relied upon by the ALJ. Throughout his opinion, the ALJ considered and weighed the physicians' opinions and medical testing results within the record, and based upon this evidence, came to the conclusion that Plaintiff was able to return to her past relevant work. (Tr. 12-16). In addition, the HHS notice includes the unequivocal statement that, " [t]his decision in no way affects any pending or future claims for Social Security or Supplemental Security Income." (Tr. 131). This statement by the HHS informed Plaintiff that the HHS decision was not binding on the ALJ. Moreover, this statement is consistent with SSR 06-03p - "we are not bound by disability decisions by other governmental and nongovernmental agencies." SSR 06-03p, 2006 WL 2329939 at *7.

After review of the entire record, the undersigned concludes that the ALJ relied upon ample and substantial evidence within the record to support his decision that the Plaintiff is not disabled.

It is also noteworthy that the ALJ determined Plaintiff's disability status at step four, finding that Plaintiff could return to her previous work as a cashier/stocker because the requirements of these positions "do not exceed her residual functional capacity for the wide range of medium work activity." (Tr. 17). That is, the ALJ did not find it necessary to proceed to the fifth step of the analysis because the overwhelming weight of the evidence within the record supported the conclusion that Plaintiff was able to perform the full range of medium work, and Plaintiff's former employment did not exceed that level of activity. Although the ALJ's failure to address the HHS notice in his decision is regrettable, the undersigned finds that the ALJ relied upon substantial evidence within the record when making his determination, and any failure by the ALJ in this particular instance to discuss the weight given to the state agency decision is harmless error.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 11) be **DENIED**; Defendant's "Motion For Judgment on the Pleadings" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard Voorhees.

**IT IS SO RECOMMENDED**.

Signed: June 15, 2011

David C. Keesler
United States Magistrate Judge